GREMILLION, J.,
dissents and assigns written reasons.
hi dissent from the majority’s ruling and would reverse the trial court’s grant of summary judgment.
This court previously determined that the 2002 rejection met the formal requirements of a valid uninsured motorist coverage waiver. Guillory v. Progressive Ins. Co., 09-1056, 09-1508 (La.App. 3 Cir. 10/6/10), 47 So.3d 12, writ denied, 10-2519 (La.12/17/10), 51 So.3d 7, and writ denied, 10-2419 (La.12/17/10), 51 So.3d 11. In that case, we also ruled that there was no change in the policy that required a new waiver. I agree with the court’s assessment at that time.
The Guillories claim that they did not argue that a new policy was issued in 2005 because they relied on jurisprudence that held that the name of the insured must be *328 included on the rejection form for it to be valid. See Gingles v. Dardenne, 08-448 (La.App. 3 Cir. 11/26/08), 998 So.2d 795, rev’d, 08-2995 (La.3/13/09), 4 So.3d 799. They also argue that since our decision, they have conducted discovery that convinces them that each year a new policy was issued to Cox. A new policy was issued, the Guillories argue, because the limits of liability coverage changed and each year intensive negotiation occurred between Cox and ^.American Home that involved the preparation and filing of applications for insurance.
Louisiana Revised Statute ■22:1295(l)(a)(ii) provides, relative to the requirement of executing a new waiver, (emphasis added):
Any changes to an existing policy, regardless of whether these changes create new coverage, except changes in the limits of liability, do not create a new policy and do not require the completion of new uninsured motorist forms. For purposes of this Section, a new policy shall mean an original contract of insurance which an insured enters into through the completion of an application on the form required by the insurer.
In footnote 2 of the majority’s opinion, it is stated that the limits of aggregate coverage changed from $2,000,000.00 to $4,000,000.00 during the time between the initial rejection and the accident. That simply is not reflected in the record. The 2003 policy, for which the initial rejection was completed, contained “Endorsement # 012,” which specifically provided (emphasis added):
5. Limit of Liability Any One Occurrence/Aggregate $2,000,000 General Liability Aggregate is twice the occurrence limit
No change in the aggregate liability limit occurred in the years that followed.
Louisiana Revised Statute 22:1295(l)(a)(i) reflects a strong public policy in favor of uninsured motorist coverage. It provides in pertinent part:
No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state ... unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy ... for the protection of persons insured thereunder who are legally entitled to recover nonpunitive damages from owners or operators of uninsured or underinsured motor vehicles[.]
[sIf UM coverage had been elected when the provisions regarding the change in the limits of liability to include the cost of defending a suit was added, the policy would not have provided an amount less than the limits of bodily injury liability provided in the policy. Indeed, had UM coverage not been rejected or a lower amount selected, the UM limits would, as a practical matter, have been greater than the liability limits. I would not find that a change in the terms of the policy to deduct the cost of defending a liability claim from the policy’s liability coverage would result in a change in the liability limits that would require execution of a new waiver. The limits of coverage did not change.
The record reflects that the premiums were negotiated every year between Cox, its insurance broker, and American Home. The nominal liability limits did not change between 2003 and the 2005 renewals. It is true that Cox and its broker did shop coverage every year and did conduct rate and coverage negotiations, including with American Home. American Home argues that if the liability limits do not change, *329 the policy is a renewal, and no new waiver or selection of lower limits is required.
But, the Guillories argue, Section 1295 should be read to mean that if an application is submitted, the policy that follows is an original contract of insurance and is thus a new policy for which a waiver or selection is required. Because Cox completed new applications every year, new policies were being issued every year.
If one shops for a new insurance policy and learns that the best deal is the policy one already has, that does not create a new policy under the statute. Only the most strained interpretation of Section 1295 could determine that an “original contract of insurance” results every time an application for coverage is submitted. The issue in this case is whether the 2005 policy was “new” under Section 1295. I |4submit that no “original contract of insurance” was issued because the terms of the coverage provided by American Home never changed, other than the aforementioned deduction from the liability limits of the cost of defense.
I also note that in the context of the dealings between Cox and American Home, the language of the policy provides for renewal. Endorsement IL 02 77 07 02, attached to and part of the 2003 policy, is entitled, “Louisiana Changes — Cancellation and Nonrenewal.” It provides that American Home could only refuse to renew the policy if it delivered to Cox a written notice of its intent sixty days before the expiration date, or its anniversary date if written for more than one year with no fixed expiration date. The only circumstance under which such a notice is not required is if American Home or another company within its insurance group offered to issue a renewal policy, or if Cox had obtained replacement coverage or had agreed in writing to obtain replacement coverage. None of those events took place, for, indeed, American Home issued a renewal policy to Cox.
Because there was no change in the policy limits and no issuance of a new policy, I would reverse the trial court. Thus, I respectfully dissent.